**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

MICHAEL ANTONELLI                                                                              PLAINTIFF

V.                                          2:07CV00118 BSM/JTR

ALISON LEUKEFELD, RDAP
Coordinator, FCI, Forrest City, AR, et al.                                          DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Brian

S. Miller.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the United States District Judge,

you must, at the same time that you file your written objections, include a "Statement of Necessity"

that sets forth the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.    An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.  Introduction

In this *Bivens* action,[1] Plaintiff, Michael Antonelli, alleges that Defendants violated his constitutional rights while he was in prison at the Federal Correctional Institution located in Forrest City, Arkansas ("FCI-FC").[2]  *See* docket entries #6 and #153.  Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Disputed Facts.[3]  *See* docket entries

---

[1] In *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Court held that  victims of constitutional violations by federal agents have a right to recover damages against them in federal court, just as 42 U.S.C. § 1983 provides redress for constitutional violations by state officials. *See also Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (explaining that "a *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983").

[2] Plaintiff is no longer in custody and resides at a private address in Maywood, Illinois.  *See* docket entry #128.

[3] This case involves four separate retaliation claims brought against nine different Defendants.  The chronology of significant facts is lengthy and confusing. Nevertheless, Defendants' Statement of Undisputed Facts contains only *four, conclusory* paragraphs of *law – and no, explanation of the relevant chronology of events.  See* docket entry #132.  Defendants' pleading is

#131, #132, and #133.  Plaintiff, who is represented by appointed counsel, has filed a Response and a Statement of Disputed Facts.  *See* docket entries #154 and #155.

## II.  Discussion

*Plaintiff* was transferred to FCI-FC in February of 2005.  *See* docket entries #133 and #154. Soon thereafter, he began filing grievances against various prison officials, including Defendants. *Id.*  In this *Bivens* action, he alleges that Defendants retaliated against him for filing those grievances by:  (1) denying him a Unicor job; (2) placing him on the Financial Responsibility Program refusal list; (3) expelling him from the Residential Drug Abuse Program; and (4) terminating him as an Adult Continuing Education tutor.  *See* docket entries #6 and #153.  The Court will discuss each retaliation claim separately.

### A.      Denial of Unicor Job

#### 1.      Facts

Upon arriving at FCI-FC on February 3, 2005, Plaintiff asked Defendant Counselor Martha DePoorter to place him on the waiting list for a Unicor job.[4]  *See* docket entry #133 and #153.  There are three waiting lists for Unicor placement: (1) list 1 is for inmates who were working for Unicor prior to transferring to FCI-FC; (2) list 2 is for inmates who have court obligations greater than

---

wholly deficient and in violation of the purpose of Local Rule 56.1.  *See Stipes v. Zomant*; 4:10CV00033 (docket entry #21) (providing an example of a proper Statement of Disputed Facts).
    Faced with this vacuum of information, the Court was forced to spend four days sifting through affidavits, grievances, and other documents in an attempt to develop a chronology of significant facts.  Additionally, without a proper Statement of Undisputed Facts, it was difficult for the Court to determine whether factual issues were in dispute.  In the future, the Court will strike any such deficient Statements of Disputed Facts submitted by an AUSA, and order rebriefing.

    [4] Unicor is a government corporation within the BOP that provides jobs to federal prisoners. *See* docket entry #133, Ex. 1.  Unicor jobs are more desirable than other prison jobs because they pay more. *Id.*

$1000; and (3) list 3 is for all other federal inmates. *See* #154, Ex. 9. Importantly, the lists operate "independently from each other" and one list "does not have to be exhausted before" proceeding to another list. *See* docket entry #133, Ex. 1 at ¶ 6. Additionally, "an inmate may be hired ahead of other inmates on the waiting list if the inmate possesses needed skills."[5] *Id.* at attachment 2.

The Unicor Factory Manager (who is not a Defendant in this action) told Defendant DePoorter that Plaintiff should be placed on list 2 because he owed approximately $12,000 in restitution and fines.[6] *See* docket entry #133, Ex. 1. On February 9 and 10, 2005, Plaintiff filed two inmate requests stating that he should be on list 1 because he had prior Unicor experience as a tool man. *See* docket entry #154, Ex. 4 and 5. Defendant DePoorter denied those requests based on the information she received from the factory manager. *Id.*

Plaintiff also claims that Defendants Counselors Kenneth Gilmore, Steven Lopez, and Billy Phillips subsequently refused his requests to be transferred to list 1. *See* docket entry #153. In May of 2005, Plaintiff filed several grievance challenging Defendants' refusal to place him on list 1. *See* docket #154, Exs. 6 through 8.

In March or May of 2005, the Unicor Superintendent of Industries (who is not a Defendant in this action) told Defendant DePoorter that the information she had received from the factory manager was incorrect.[7] *See* docket entry #133, Ex. 1. He further explained that Plaintiff should

---

[5] The parties have not clarified how inmates are chosen from these three separate waiting lists.

[6] Plaintiff claims that he was initially placed on list 3, and later put on list 2. *See* docket entries #153 and #154. However, this discrepancy is not relevant to the resolution of the Motion for Summary Judgment.

[7] In her affidavit, Defendant DePoorter says that she put Plaintiff on list 1 in March of 2005. *See* docket entry #133, Ex. 1. However, in May of 2005, Plaintiff filed several grievances stating that he had still not been placed on the correct Unicor list. *See* docket entry #154, Exs. 6, 7, and 8.

be placed on list 1, regardless of the amount of his outstanding debt, because he had prior Unicor experience. *Id.* Immediately thereafter, Defendant DePoorter placed Plaintiff on list 1, and back dated his placement to reflect where he would have been if she had placed him on list 1 on February 3, 2005. *See* docket entry #133, Ex. 1. Nevertheless, Plaintiff's name did not come up for a Unicor job prior to leaving the FCI-FC. *Id.*

### 2.    Analysis

Plaintiff alleges that Defendants DePoorter, Gilmore, Lopez, and Phillips denied him a Unicor job in retaliation for him filing grievances against them.[8] *See* docket entry #153.

"Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Nei v. Dooley,* 372 F.3d 1003, 1007 (8th Cir. 2004); *Cody v. Weber*, 256 F.3d 764, 770-71 (8th Cir. 2001). In other words, "[t]o be actionable, the retaliatory conduct itself need not be unconstitutional because the constitutional violation lies in the intent to impede access to the courts." *Nei*, 372 F.3d at 1007.

Thus, although Plaintiff did not have a constitutional right to a Unicor job, prison officials could not have denied him such a position in retaliation for his exercising his constitutional right to file grievances.[9] *See Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (explaining that the filing of

---

This discrepancy is not relevant to the resolution of the Motion for Summary Judgment.

[8] In his First Amended Substituted Complaint, Plaintiff also alleges that Defendant Gilmore refused to file Plaintiff's grievance about being placed on the wrong Unicor list. *See* docket entry #153. However, Plaintiff has not offered *any* evidence to support this claim, nor has he addressed it in his Response to Defendants' Motion for Summary Judgment. *See* docket entry #154. Thus, it appears that he has abandoned this allegation.

[9] However, a prisoner "cannot immunize himself from adverse administrative action by prison officials merely by filing grievances and then claiming that everything that happens to him

grievances is part of a prisoner's First Amendment right to access the courts); *Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir. 1995) (same).

In order to succeed on a retaliation claim, Plaintiff must establish that: (1) he engaged in constitutionally protected activity; (2) defendants took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and (3) retaliation was the actual motivating factor for the adverse action. *See Lewis*, 486 F.3d at 1028; *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004); *Sisneros v. Nix*, 95 F.3d 749,752 (8th Cir. 1996).

While filing grievances is a constitutionally protected activity, Plaintiff filed his grievances against Defendants Gilmore, Lopez, and Phillips several months *after* he was placed on the wrong Unicor list in February of 2005.[10]   *Id.*   Thus, Defendants' alleged desire to retaliate against Plaintiff for filing grievances against them could not possibly have been the motivating factor for the Defendants' actions.  *See Lewis*, 486 F.3d at 1029 (explaining that:  "The lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of a casual connection").

Additionally, Defendant DePoorter explains, in her sworn affidavit, that she: (1) did not retaliate against Plaintiff; (2) placed him on list 2 due to incorrect information she received from the

---

is retaliatory. *Rienholtz v. Campbell*; 64 F. Supp. 2d 721, 733 (W.D. Tenn. 1999).  " If that were so, then every prisoner could obtain review of non-cognizable claims merely by filing a lawsuit or grievance and then perpetually claiming retaliation." *Id.*  "A plaintiff cannot bootstrap a frivolous complaint with a conclusory allegation of retaliation." *Id.*

[10]  Plaintiff first began filing grievances against: (1) Defendant DePoorter in May of 2005; (2) Defendant Gilmore in October of 2005; (3) Lopez in September of 2005; and (4) Defendant Phillips in May of 2005.  *See* docket entry #153, Ex. A; docket entry #154, Ex. 6, 7, and 8.  Many of these grievances expressed Plaintiff's dissatisfaction with having been placed on the wrong Unicor list

Unicor factory manager; and (3) put Plaintiff on list 1 as soon as she received the correct information from the Unicor Superintendent of Industry.  *See* docket entry #133, Ex. 1.  Similarly, Defendants Gilmore, Phillips, and Lopez state, in their sworn affidavits, that they either: (1) had no authority to change Plaintiff's placement on the Unicor  lists; or  (2) had no personal involvement in the matter.  *Id.*, Exs. 2, 3, and 4.

Importantly, Plaintiff has failed to come forward with *any* evidence to refute those statements or otherwise demonstrate a retaliatory motive on the part of the Defendants.  *See Lewis*, 486 F.3d at 1029 (holding that, to avoid summary judgment, a prisoner must present "affirmative evidence of a retaliatory motive");  *Johnson v.  Hamilton*, 452 F.3d 967, 973 (8th Cir.  2006) (stating that a prisoner "carries a substantial burden to prove that retaliation was the actual motivating factor");  *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (explaining that speculative and conclusory allegations are insufficient to establish a retaliation claim).

Finally, Defendant DePoorter explains, in her sworn affidavit, that Unicor did not hire *any* FCI-FC prisoners between February and May of 2005.  Thus, Plaintiff "did not miss any opportunity for job placement in Unicor, nor did he miss making any money as a result of his waiting list category and placement."[11]  *See* docket entry #133, Ex. 1 at ¶ 10.  Under these circumstances,

---

[11]  Plaintiff attempts to refute this statement by producing an *unsworn* grievance, dated May 27, 2005, in which he *alleged* that "people who got here a month after me have already received a Unicor paycheck."  *See* docket entry #154, Ex. 8.  Plaintiff has not provided a response to that grievance.  He also does not address whether these prisoners received their Unicor paychecks from jobs they had *before* they transferred to the FCI-FC.  Additionally, as previously discussed, Unicor does not have to exhaust list 1 before selecting inmates from list 2 or 3, especially if an inmate on list 2 or 3 has a needed skill.  *See* docket entry #133, Ex. 1.  Finally, and most importantly, it is well settled that inadmissible hearsay cannot be used to defeat summary judgment.  *See Brooks v. Tri-Sytms., Inc.,* 425 F.3d 1109, 1111 (8th Cir. 2005); *see also Davidson & Assoc. v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005) (explaining that a plaintiff facing summary judgment "may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative

Plaintiff did not suffer any actual adverse action as a result of his temporary placement on the wrong Unicor list.  Accordingly, the Court concludes that Defendants DePoorter, Gilmore, Lopez, and Phillips are entitled to summary judgment on Plaintiff's retaliation claims arising from his request for a Unicor job.

**B.     Placement on FRP Refusal List**

     **1.     Facts**

As previously mentioned, Plaintiff owed approximately $12,000 in restitution and fines when he arrived at FCI-FC in February of 2005.  *See* docket entry #133, Ex. 1.  Pursuant to the Financial Responsibility Program ("FRP"), the BOP withdrew $25 from Plaintiff's trust account every three months and credited that sum toward the payment of those debts.[12] *Id.*  This was the minimum payment authorized by the FRP.  *Id.*

On June 16, 2005, Plaintiff met with Defendant DePoorter for his six-month review.  *Id.*  Based upon the deposits in Plaintiff's trust account for the past six months, Defendant DePoorter determined that Plaintiff's FRP payments needed to be increased to either $60 a month or $180 a quarter.[13]  *Id.; see also* docket entry #154, Ex. 10.  Plaintiff became very angry and disruptive

-----

evidence that would permit a finding in the plaintiff's favor").

[12]  The BOP cannot take money from a prisoner's trust account without his  consent or a court order.  *See* docket entry #133, Ex. 1. Under the FRP, inmates can sign a contract authorizing the BOP to make withdrawals from their inmate trust accounts for payment of outstanding debts. *Id.* The amount and frequency of the withdrawals are based on the funds in the inmates' accounts. Importantly, inmates become ineligible for certain prison programs and privileges if they refuse to participate in the FRP.

[13] Defendant DePoorter states that her calculations were based upon a formula contained in BOP policy 5380.08.  *See* docket entry #133, Ex. 1.  However, she has not provided the Court with the formula, her calculations, or the balance in Plaintiff's trust account.

because he thought that he did not have enough money to make increased FRP payments.[14]  *See* docket entry #133, Ex. 1.  He then refused to sign the new FRP payment plan. *Id.*

On June 20, 2005, Defendants DePoorter and Defendant Unit Manager Mark Tipton placed Plaintiff on the list of prisoners who had refused to participate in the FRP.  *Id.; see also* docket entry #133, Ex. 6.  As a result, Plaintiff became ineligible for a Unicor job.  *Id.*

Plaintiff alleges that, during the following months, Defendants Phillips, DePoorter, Tipton, and Case Manager Francene Helaire refused to work with him to create an FRP payment plan that was within his financial means.  *See* docket entry #153.

During this time, Plaintiff was enrolled in the Residential Drug Abuse Program ("RDAP"). *Id.*  In August of 2005, Defendant Dr. Alison Leukefeld, who was the Coordinator of the RDAP, learned that Plaintiff was on the FRP refusal list.  *See* docket entry #133, Ex. 7.  BOP Policy Statement 5330.10 provides that any inmate on the FRP refusal list is not allowed to receive award pay for participating in the RDAP, and the issue of financial responsibility must be added to the inmate's RDAP treatment plan.  *Id.*

On August 30, 2005, Defendant Leukefeld drafted a Learning Contract as an addendum to Plaintiff's RDAP treatment plan.  According to this document, Plaintiff would sign a new FRP contract and begin making payments in September of 2005.[15]  *See* docket entry #133, Ex. 7.

---

[14]  Plaintiff received a disciplinary conviction for his behavior in Defendant DePoorter's office. Plaintiff is challenging that conviction in *Antonelli v. DePoorter, et al;* 2:08CV00003 JMM/JJV.

[15]  It is unclear when Plaintiff signed the Learning Contract.  *See* docket entry #153, Ex. C. Defendant Leukefeld explains, in her sworn affidavit, that the Learning Contract was entered into the Psychological Data System on September 7, 2005.  *See* docket entry #133, Ex. 1. In his First Amended Substituted Complaint, Plaintiff makes the unsupported allegation that Defendant Leuekfeld "backdated the Learning Contract in her computer entries to cover up her wrongful

On September 15, 2005, Plaintiff signed an FRP contract agreeing to pay $180 every three months, starting in December of 2005. *See* docket entry #154, Ex. 15. The next day, on September 16, 2005, Plaintiff signed another FRP contract agreeing to pay $60 every month, starting in November of 2005.[16] *Id.,* Ex. 16. Plaintiff was then taken off the FRP refusal list, and he became eligible for a Unicor job. *See* docket entries #133, Exs. 1 and 4.

### 2.    Analysis

Plaintiff alleges that, on June 20, 2005, Defendants DePoorter, Tipton, and Helaire placed him on the FRP refusal list in retaliation for him filing grievances against them. *See* docket entry #153. Similarly, Plaintiff alleges that, on August 30, 2005, Defendant Leukefeld forced him to sign a Learning Contract, regarding his FRP payments, in retaliation for him filing grievances against her.[17] *Id.*

Defendants Tipton and Helaire could not possibly have been motivated by retaliation because Plaintiff filed his first grievances against them *after* he was placed on the FRP list on June 20, 2005.[18] *See also Lewis,* 486 F.3d at 1029 (explaining that: "The lack of a temporal connection

---

retaliation." *See* docket entry #153 at ¶ 41. He also has not addressed this claim in his Response to Defendants' Motion for Summary Judgment. *See* docket entry #154. Thus, it appears that he has abandoned this allegation.

[16] The parties have not explained why Plaintiff signed two FRP contracts, within 48 hours, or why those contracts required him to pay *different* amounts from his prison trust account.

[17] In his First Amended Substituted Complaint, Plaintiff also alleges that, on an *unspecified date*, Defendants Gilmore and Leukefeld took all of Plaintiff's money from his inmate trust account. *See* docket entry #153 at ¶¶ 38-39. Plaintiff has failed to come forward with *any* evidence to support this allegation. Additionally, he has not addressed it in his Response to Defendants' Motion for Summary Judgment. *See* docket entry #154. Thus, it appears that he has abandoned this allegation.

[18] Plaintiff filed his first grievance against Defendant Tipton on June 23, 2005. *See* docket entry #154, Ex. 13. He filed his first grievance against Defendant Helaire on October 6, 2006. *See* docket entry #153, Ex. A.

between the protected activity and the alleged retaliation dispels any inference of casual connection").

In contrast, Plaintiff's retaliation claims against Defendants DePoorter and Leukefeld pass the temporal connection test because: (1) he filed several grievances against Defendant DePoorter before she placed him on FRP status on June 20, 2005; [19] and (2) he filed a grievance against Defendant Leukefeld on August 2, 2005, which was before she drafted the Learning Contract on August 30, 2005.  *See* docket entry #154, Ex. 23.

However, timing alone is not sufficient to establish retaliation.  A prisoner must also demonstrate that retaliation was the *actual motivating factor* for the adverse action.  *Foster v. Delo*, 130 F.3d 307, 308 (8th Cir. 1997) (emphasis added); *Sisneros v. Nix*, 95 F.3d 749,752 (8th Cir. 1996).  In other words, the inmate must prove that the adverse action would not have occurred "but for" the desire to retaliate. *Id.*

Defendants DePoorter and Leukefeld state, in their sworn affidavits, that: (1) the increase in Plaintiff's FRP payment was correct and in accordance with BOP policy; (2) Plaintiff had sufficient funds in his inmate trust account to pay the increased amount; (3) BOP policy mandated that Plaintiff be placed on the FRP refusal lists when he refused to sign the new FRP agreement; (4) BOP policy specified that Plaintiff was ineligible for a Unicor job while he was on the FRP refusal list; and (5) BOP policy required that Plaintiff's FRP refusal status be addressed in his RDAP

---

Defendant Helaire explains, in her sworn affidavit, that she placed Plaintiff on RFP refusal list at the direction of Defendants Tipton and DePoorter, and that she did not have any authority to change that designation.  *See* docket entry #133, Ex. 5.  Plaintiff has failed to come forward with any evidence to refute those assertions by Defendant Helaire.

[19] Plaintiff filed grievances against Defendant DePoorter on May 5, May 7, May 27, and June 2, 2005. *See* docket entry #154, Exs. 6, 7, and 8; docket entry #133, Ex. A.

treatment plan.  *See* docket entry #133, Ex. 1 and 7.

Plaintiff has not come forward with *any* evidence to refute those sworn statements or otherwise establish that Defendants' actions were improper or actually motivated by retaliation.[15] *See Lewis*, 486 F.3d at 1029 (8th Cir. 2007) (explaining that, in order to avoid summary judgment, a prisoner must present "affirmative evidence of a retaliatory motive"). Accordingly, Defendants DePoorter, Tipton, Helaire, and Leukefeld are entitled to summary judgment on Plaintiff's retaliation claims regarding his placement on the FRP refusal list.

**C.     Expulsion from the RDAP**

Plaintiff began participating in the RDAP soon after he arrived at the FCI-FC in February of 2005.  *See* docket entries #133 and #154.

 On April 22, 2005, Plaintiff received a sixty-day review from Drug Treatment Specialist John Shaver, who is not a Defendant in this action.  *See* docket entry #154, Ex. 26.   In his review, Mr. Shaver noted that Plaintiff needed to: (1)  improve his "willingness to accept responsibility for his actions"; and (2) "become less defensive concerning institutional rules." *Id.*  Mr. Shaver concluded his report by rating Plaintiff's overall progress as "satisfactory." *Id.*

On June 22, 2005, Plaintiff had his second, sixty-day review by Mr. Shaver. *Id.*, Ex. 27.  Mr. Shaver noted that Plaintiff:  (1) "had issues with unit staff during this review period that have not been handled well on his part;" (2) talked "excessively in class"; and (3) had received an incident report for insolence to staff and disobeying an order. *Id.*  at 27.  Mr. Shaver reduced Plaintiff's

---

[15] Plaintiff has produced several *unsworn* grievances in which he *alleged* that he did not have sufficient funds to pay the increase in his FRP plan.  *See* docket entry #154, Exs. 10, 11, 12, 13, and 17.  Plaintiff did not provide Responses to those grievances.  Additionally, it is well settled that a plaintiff cannot defeat summary judgment with conclusory, self-serving allegations or inadmissible hearsay.  *See Brooks,* 425 F.3d at 1111; *Davidson,* 422 F.3d at 638 (8th Cir.2005).

overall progress rating to "fair." *Id.*

On August 19, 2005, Plaintiff received a sixty-day review by Drug Treatment Specialist Phyllis Forbes, who is not a Defendant in this action. *Id.*, Ex. 28. Ms. Forbes stated, in her report, that Plaintiff continued to have problems with being insolent to staff and disobeying orders and that he received an incident report for being insolent to staff and disobeying an order. *Id.* Additionally, Ms. Forbes explained that Plaintiff had been counseled by his facilitator and the RDAP coordinator about how this behavior was interfering with his treatment. *Id.* She also rated Plaintiff's overall progress as "fair." *Id.*

A few weeks later, on or about October 20, 2005, Defendants Leukefeld and Chief Psychologist Dr. James Hoover expelled Plaintiff from the RDAP. *See* docket entries #133 and #154.

### 2.    Analysis

Plaintiff alleges that Defendants Leukefeld and Hoover expelled him from the RDAP in retaliation for him filing grievances against them.[16] *See* docket entries #153 and #154.

However, in their sworn affidavits, Defendants Leukefeld and Hoover explain that they expelled Plaintiff because: (1) he "was unable to engage in the treatment process in spite of repeated and long-term efforts to help him acknowledge problems and work to overcome them"; and (2) his "resistence to treatment was so extreme as to prevent acceptance of treatment goals and to preclude his successful completion of the program." *See* docket entry #133, Exs. 7 and 10. These

---

[16] Plaintiff filed at least four grievances against Defendant Leukefeld before she expelled him from the RDAP on or about October 20, 2005. *See* docket entry #153, Ex. A; docket entry #154, Exs. 23 and 24. He also filed one grievance against Defendant Hoover on September 29, 2005. *See* docket entry #154, Ex. 25.

conclusions are consistent with Mr. Shaver's and Ms. Forbes's reports, which documented that Plaintiff consistently had problems with insolence, obeying staff, and otherwise complying the RDAP objectives.  Finally, although he has been given an opportunity to do so, Plaintiff has failed to present any evidence demonstrating that retaliation was the actual motivating factor for his expulsion from the RDAP.  Accordingly, Defendants are entitled to summary judgment on this claim.

### D.    Termination as an ACE Tutor

### 1.    Facts

During his confinement at the FCI-FC, Plaintiff had a non-Unicor job in the recreation department.  *See* docket entries #133 and #153.  He also served as a tutor in the Adult Continuing Education ("ACE") program, where he taught classes in real estate, positive thinking, and the Freedom of Information Act.  *Id.*

On October 7, 2005, Plaintiff filed a grievance alleging that DefendantTipton "threatened" him for filing a lawsuit against him.  *See* docket entry #154, Ex. 18.  On October 18, 2009, Plaintiff filed a grievance alleging that Defendant Warden Linda Sanders defrauded and deceived inspectors while they were examining the prison kitchen.  *Id.,* Ex. 19.

On or about November 2, 2005, Defendants Tipton and Sanders increased Plaintiff's work hours in the recreation department.  *Id.* at Ex. 20; docket entry #133 Exs. 6 and 9.  Immediately thereafter, Plaintiff filed a grievance alleging that Defendants Tipton and Sanders increased his working hours so that he would have less time to file grievances and use the law library.[17]  *See*

---

[17] Plaintiff does not allege that he missed any filing deadlines or that he was otherwise actually injured or prejudiced as a result of his allegedly limited access to the law library. *See* docket entry #153.   Thus, he has failed to sufficiently plead a separate access to the courts claim.  *See*

docket entry #154, Ex. 21.   On or about November 16, 2005, Defendants Tipton and Sanders

terminated Plaintiff's position as an ACE instructor.[18]   *Id.* at Ex. 22.

### 2.      Analysis

Plaintiff contends that Defendants Sanders and Tipton terminated his position as an ACE

tutor in retaliation for him filing grievances against them.[19]   *See* docket entry #153.   In their sworn

affidavits, Defendants Sanders and Tipton give the following non-retaliatory reason for terminating

Plaintiff as an ACE instructor:  he engaged in a group demonstration on March 2, 2006.[20]   *See* docket

entry #133, Exs. 6 and 9.   Because it appears that Plaintiff was terminated as an ACE tutor on or

about November 16, 2005,  approximately *four months before* he engaged in a group demonstration,

Defendants' explanation makes little sense.   Nevertheless, the Court concludes that Defendants are

entitled to summary judgment on this retaliation claim.

First, Plaintiff does not allege that he received any payment for his services as an ACE tutor.

*See* docket entries #153 and #154.    Additionally, he has not alleged or proven any facts

_____

*White v. Kautzky,* 494 F.3d 677, 680 (8th Cir. 2007) (explaining that, in order to proceed with an
access to the courts claim, a prisoner must allege that he was "actually injured" in regard to a
"nonfrivolous and arguably meritorious underlying legal claim"); *Lewis v. Casey*, 518 U.S. 343, 348
(1996) (explaining that "actual injury," necessary to state a viable access to the courts claim,  means
"actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a
filing deadline or to present a claim").

[18] Defendants do not specify when Plaintiff was terminate from his position as an ACE tutor.
*See* docket entry #133.   In his First Amended Substituted Complaint, Plaintiff alleges that he was
terminated in December of 2005.   *See* docket entry #153 at ¶ 55.   However, on November 17, 2005,
Plaintiff filed a grievance stating that he was terminated as an ACE tutor "yesterday." *See* docket
entry #154, Ex. 22.

[19] Plaintiff filed grievances against Defendants Tipton and Sanders on  October 7, 19, and
Nov. 2, 2005.   *See* docket entries #154, Exs. 18, 19, and 20.

[20] Plaintiff was convicted of that disciplinary charge on March 29, 2006.   *See* docket entry
#133, Ex. 8.

demonstrating that the loss of his position as an ACE tutor was anything more than an inconsequential change in his daily prison activities.   Accordingly, Plaintiff has failed to demonstrate that his termination as an ACE tutor would chill a prisoner of ordinary firmness from filing grievances against prison officials.   *See Lewis*, 486 F.3d at 1028 (explaining that, to succeed on a § 1983 claim, a prisoner must prove that the defendants to adverse action against him that "would chill a person of ordinary firmness" from engaging in a protected activity, such as filing grievances); *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (acknowledging that prisoners are expected to endure more than freeworld citizens, and thus, are less likely to be deterred from exercising their First Amendment rights); *Williams v. City of Carl Junction, Mo.*, 480 F.3d 871, 878 (8th Cir. 2007) (finding insufficient adverse action where a freeworld citizen claimed that a police officer issued her a traffic violation in retaliation for speaking out against municipal practices).

Second, as previously discussed, a prisoner cannot convert frivolous legal claims into viable § 1983 claims merely by alleging that every insignificant and inconsequential action is the product of retaliation.   *See Reinholtz*, 64 F. Supp. at 733.   In this case, that is precisely what Plaintiff has repeatedly done.

Plaintiff has a well-established history of filing frivolous and vexatious lawsuits throughout the country. [21]   On numerous previous occasions, he has attempted to elevate minor transgressions

---

[21] *See, e.g., Antonelli v. Keffer*; Case No. 06-6310, 2007 WL 2007581 (10th Cir. Jul. 12, 2007) (unpublished opinion) (noting that Plaintiff's "flurry of frivolous petitions to the Arkansas district court is merely a tributary in the river of meritless litigation he as initiated as a prisoner in the federal system"); *Antonelli v. Hastings*; Case No. 06CV283, 2007 WL 1309572 (E.D. Ky May 1, 2007) (unpublished opinion) (explaining that: "Over the last 15 years, Antonelli has filed approximately 100 or more federal habeas corpus petitions and civil complaints, almost all of which have been dismissed for failure to state a claim or as frivolous").

into constitutional claims by alleging retaliation. Plaintiff clearly had no constitutional right to keep his position as an ACE tutor. Just as with the other claims he has asserted, Plaintiff alleges he lost this position due to Defendants having some nebulous reason to retaliate against him. The implausible and unsubstantiated nature of the Defendants' alleged retaliatory motive also causes this claim to fail. Accordingly, Defendants Tipton and Sanders should be granted summary judgment on Plaintiff's retaliation claim arising from his termination as an ACE tutor.[22]

### III.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.       Defendants' Motion for Summary Judgment (docket entry #131) be GRANTED, and that this case be DISMISSED, WITH PREJUDICE.

2.       The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3) that an *in forma pauperis* appeal from any Order and Judgment adopting this Recommended Disposition would not be taken in good faith.

---

[22] Defendants also argue that they are entitled to the qualified immunity defense. *See* docket entry #33. Government officials are not entitled to qualified immunity if, at the time of the alleged violation, his or her conduct violated a clearly established federal statutory or constitutional right of which a person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815-816 (2009); *Serna v. Goodno*, 567 F.3d 944, 951-52 (8th Cir. 2009). Clearly, the Defendants in this case are not entitled to qualified immunity because, in 2005 when the alleged retaliation occurred, it was clearly established that prison officials could not retaliate against prisoners for filing grievances. *See Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999); *Cornwell v. Woods*, 69 F.3d 1383, 1388 (8th Cir. 1995). Although Defendants are not entitled to qualified immunity, they are, nevertheless, entitled to summary judgment on each of Plaintiff's retaliation claims for the reasons previously explained in this Recommended Disposition. *See Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) (holding that "if the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed").

Dated this <u>25th</u> day of June, 2010.


_____
UNITED STATES MAGISTRATE JUDGE